IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CAMILLA BAKER-SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 3:13-cv-00140-WKW-WC |
| | * | |
| DAN M. HEALAN; ALFA MUTUAL | * | |
| INSURANCE COMPANY; | * | |
| FICTITIOUS DEFENDANTS A-II; | * | |
| | * | |
| Defendants. | * | |

## DEFENDANT DAN M. HEALAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Defendant, Dan M. Healan, by and through counsel, and respectfully requests this Honorable Court to enter partial summary judgment in his favor pursuant to Rule 56, Fed.R.Civ.P. With respect to certain claims asserted in this case, there are no disputed issues of material fact and Healan is entitled to judgment as a matter of law. In support of his Motion for Partial Summary Judgment, Healan states as follows:

## PROCEDURAL HISTORY

This case involves a rear-end collision automobile accident involving the parties which occurred on May 19, 2011. (See Doc 1, Exhibit A, Complaint). The accident occurred in the northbound lanes of Interstate 85 in Macon County, Alabama. *Id.*

On January 31, 2013, suit was filed by Plaintiff Camilla-Baker Smith in the Circuit

Court of Macon County, Alabama, against Defendant Dan M. Healan.  (See Doc. 1, Exhibit A, Complaint).  The Complaint filed by Baker Smith asserted claims of (1) negligent operation of a motor vehicle (Count I); (2) wanton operation of a motor vehicle (Count II); (3) negligent and/or wanton entrustment (Count III); (4) uninsured and/or underinsured motorist benefits (Count IV); and (5) respondeat superior (Count V).  *Id*.

After service of the Complaint on March 4, 2013, the Defendant filed a Notice of Removal based on diversity jurisdiction.  (Doc. 1).  Healan filed an Answer on that same date.  (Doc. 3).

Subsequently, the Plaintiff filed her First Amended and Restated Complaint on May 28, 2013.  (Doc. 25).  In addition to the original five claims described above, the Plaintiff added her claims of (1) negligent repair/maintenance/manufacture of equipment (Count VI); (2) wanton repair/maintenance/manufacture of equipment (Count VII); and (3) negligence per se-violation of safe brake act (Count VIII).  *Id*.  The Amended Complaint was answered by Healan on June 17, 2013 (Doc. 28).

As set forth in more detail below, Healan asserts that he is entitled to partial summary judgment on all claims of wantonness asserted in this case.

## UNDISPUTED MATERIAL FACTS

As noted above, this case involves a motor vehicle accident which occurred on May 19, 2011.  Healan was driving a 2002 Nissan Altima that he purchased new in 2002.  (See Exhibit A, Depo. of D. Healan, p. 14-15).  The car was equipped with a manual five-

2

speed transmission.  *Id.* at 16.  The Defendant was familiar with manual transmission vehicles and had been driving the same for approximately 50 years at the time of the accident at issue in this case.  *Id.* at 17.  The Altima driven by the Defendant was last serviced on November 19, 2010--approximately seven months before the accident--by Tim's Quality Care in New Orleans.  *Id.* at 22-23.  This service included an inspection of the braking system of the vehicle which was found to be in good working order.  (See Exhibit A, Depo. of D. Healan, p. 27;  Exhibit B, Depo. Exhibit 3).

With respect to the braking system on the Altima, the Defendant testified as follows:

> "Q.   So as you left New Orleans headed to Atlanta on May 19, 2011, your car was operating properly?
>
> A.   Correct.
>
> Q.   As you were driving from New Orleans to Montgomery, did you experience any mechanical problems with your car?
>
> A.   Not that I can recall, no.
>
> Q.   Okay.  Had you ever had any problems with the brakes on the car?
>
> A.   No.  Not - - they said the brakes needed replacement, as you noted in the servicing.  But, no.  Driving, no, I never experienced problems with the brakes driving.
>
> Q.   Other than normal wear on them that would necessitate replacing brake pads or rotors or something like that, you had never had any problems with the brakes on the car?
>
> A.   No.  I had not had any problems with the brakes."

*Id.* at 35-36.

3

On the day of the accident, the Defendant was driving from New Orleans to Atlanta with his wife, Nancy Healan. *Id.* at 17. After leaving New Orleans, the Healans traveled on Interstate 10 and eventually entered Interstate 65 and headed north toward Montgomery. *Id.* at 36. According to the Defendant, he believes they stopped on two or three occasions prior to arriving in the Montgomery area. *Id.* at 36-37. In sum, Healan had travelled several hundred miles and used the brakes multiple times without incident in the hours prior to the accident.

After driving through Montgomery, the Healans began traveling north on Interstate 85 toward Atlanta. *Id.* at 37.

In describing the accident, the Defendant testified as follows:

"Q.   You're taking your trip to Atlanta. You're driving up I-65, you get to Montgomery and then start heading up I-85. If you would, start at that point and tell us what happened during the course of your trip leading up to the time of the collision.

A.   Okay. We had - - on that trip, we would have stopped at the Alabama Welcome Station at the Mississippi, Alabama line. We usually stop and get gasoline around Atmore, Alabama. We usually stop for lunch around Evergreen, Alabama, and again, though I don't specifically recall the dates, I'm sure we did, that was a fairly regular occasion.

So from there, we would driven through, up 65, gotten on I-85 and headed north towards Atlanta. We were driving outside - - outside of Montgomery. We were - - we were driving the Nissan. I was driving. We were in fifth gear and I had the cruise control activated to highway speed, which was 70 miles an hour, as I recall.

As we were driving some - - in Macon County, driving along, I noted car lights, brake lights coming on and cars in front of me, which indicated that everybody was stopping. At that point, I applied my brakes and we - - nothing happened. That is, we continued, we continued moving. I felt no

4

sensation of the brakes working or anything.  I tried it several times.  My wife looked over at me and said why aren't we stopping and I said we have no brakes.

At that moment, I decided to downshift.  I shifted from fifth gear into second gear.  This substantially reduced the speed of the car.  We were in the right lane approaching a bridge.  Cars stopped in front of me.  I believe the Lambeth vehicle was the one that was in front of us.

There was some space between her vehicle and the edge of the bridge and what I was going to try to do was lay the car up against the bridge gently enough that I wouldn't - - that I wouldn't certainly hurt my wife, but to try to help slow it down further.  When I did, we glanced off the - - we glanced off the bridge and into the back of [the Lambeth] vehicle and we came to a stop.

*Id.* at 36-38.  Healan's car initially impacted the side of the bridge and then with the rear of a vehicle operated by Louise Lambeth.  The Lambeth vehicle was then pushed forward and collided with the rear of the Plaintiff's vehicle, causing relatively minor damage. (See Exhibit C, Photographs depicting damage to Plaintiff's vehicle attached as Defendant's Exhibit 1 to Depo. of Baker-Smith).  The Defendant had not had any type of problems with the brakes on the trip prior to the failure which occurred immediately prior to the accident.  *Id.* at 45-47.

Nancy Healan was in the front seat of the Altima.  In describing the accident, Nancy Healan testified as follows:

"I saw these cars.  A lot of - - I guess I actually saw - - well, there were a lot of brake lights, but they were stopped.  And I said, Dan, do you see those cars, because it felt like we were - - we were going right.  And he said, yes, I have no brakes.  And then it was like it was a - - it was just surreal.

I saw what he was trying to do.  He was aiming toward the bridge

5

and aiming the car between the guardrails in front of us and the bridge, and I - - and it was so weird.  I thought he was going to make it.  I really did.  We were not talking at that point.  We did not talk.  He just - - and then I thought he was going to make it, and then about that time, we hit the car - - we hit the side of the bridge and then we hit the car in front of us."

(See Exhibit D, Depo. of N. Healan, p. 16.)

According to the Plaintiff, she was returning from Montgomery to her workplace in Tallassee at the time of the accident.  (See Exhibit E, Depo. of Baker-Smith, p. 53). Approximately a mile or a mile and a half from her exit, traffic came to a stop on the interstate.  *Id*. at 54. Traffic was stopped in both travel lanes.  *Id*.  While the Plaintiff was stopped in traffic, a SUV came to a stop directly behind her car.  *Id*. at 57. Plaintiff testified that she saw the green Altima approaching from the rear using her side mirrors.  *Id*. at 60.  While she opined that the Altima was "going pretty fast," she also stated "I don't know how fast." *Id*. at 62. The green Altima driven by Healan struck the SUV and pushed it forward into the rear of the Plaintiff's vehicle.  *Id*.  The Plaintiff does not recall speaking with Dan Healan or his wife following the wreck.  *Id*. at 65.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 323-23.

Once the moving party has met its burden, Rule 56(e), "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 323.  To avoid summary judgment, the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.

**ARGUMENT**

I.   <u>The Defendant is Entitled to Summary Judgment on the Plaintiffs' Wantonness
     Claim (Count II)</u>

Based on the undisputed facts in this case, summary judgment is appropriate
with respect to the claim of wanton operation of a vehicle (Count II).  Wantonness is
statutorily defined as "conduct which is carried on with a reckless or conscious
disregard fo the rights or safety of others." *Ala. Code* 1975, § 6-11-20(b)(3). Wantonness
has been defined by the Alabama Supreme Court as:

> "the conscious doing of some act or the omission of some duty under the
> knowledge of the existing conditions, and conscious that from the doing
> of such act or omission of such duty injury will likely or probably result. "

*Britton v. Doehring*, 242 So. 2d 666 (Ala.1970); *Westbrook v. Gibbs*, 231 So. 2d 97 (Ala.1970);
*Tucker v. Cox*, 213 So. 2d 222 (Ala.1968); *Culpepper & Stone Plumbing & Heating Co. v.
Turner*, 162 So. 2d 455 (Ala.1964).  Alabama courts have often reiterated that while
ordinary negligence involves inadvertence, wantonness requires a showing of a
conscious or an intentional act. *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998); *Hornady
Truck Line, Inc. v. Meadows*, 847 So. 2d 908, 915-916 (Ala. 2002).

Although this Court must apply the Alabama definition of wantonness, "in
diversity cases federal courts apply a federal rather than state test in determining the
sufficiency of the evidence to create a jury question. . . ."  *Salter v. Westra*, 904 Fed. 2d
1517, 1524 (11th Cir. 1990).  In the context of summary judgment at the federal level, the
test is whether, in viewing the substantial evidence in the light most favorable to the

8

Plaintiff, a genuine issue exists for trial.  *Monroe v. Brown*, 307 Fed.Supp. 2d 1268, 1271

(M.D. Ala. 2004).

In *Partridge v. Miller*, 533 So.2d 585 (Ala. 1989), the defendant made a left turn in

front of the plaintiff's vehicle.  Neither vehicle was exceeding the posted speed limit.  *Id.*

The trial court granted a directed verdict for the defendant on the issue of wantonness

at the close of the plaintiff's case.  *Id.*  In affirming the decision of the trial court, the

Court stated as follows:

> Even [viewing] the evidence most favorably to the [plaintiffs] there is not
> a scintilla of evidence that [the defendant] 'consciously and intentionally
> did some wrongful act or omitted some duty which produced injury' to
> the [plaintiffs].  *McGehee v. Harris*, 416 So.2d 729 (Ala.1982)... The only
> reasonable inference that can be drawn from the evidence in the present
> case is that [the defendant] failed to exercise good judgment in executing
> the turn. The [plaintiffs] offered evidence that tended to show only
> negligence on [the defendant's] part, and the question of negligence was
> properly submitted to the jury for its resolution.  The trial court did not err
> in directing a verdict for [the defendant] on the issue of wantonness.

*Id.* at 587-88.

Similarly, in *George v. Champion Insurance Company*, 591 So.2d 852 (Ala. 1991), the

Court held that the following circumstances did not constitute wantonness:

> The occupants of the [defendant's] car were engaged in conversation.  As
> the [defendant's] car approached the intersection of the parkway and Golf
> Road, [the defendant] saw that the traffic light was green.  She glanced
> back in conversation.  When she looked forward, the traffic light was red.
> [A passenger] cried out for her to stop. [The defendant] testified in her
> deposition that she tried to put her foot on the brake pedal, but missed
> and hit the clutch pedal.  She ran the red light, and her automobile
> collided with a vehicle that turning left in front of her.  *Id.* at 854.

The Court held that the facts of this case, when viewed in a light most favorable to the Plaintiff, did not provide substantial evidence of wantonness on the part of the driver of the vehicle. "While the facts show inadvertence on the part of the driver, they do not amount to wantonness, which require some degree of conscious culpability." *Id.*

In *Ex parte Anderson*, 682 So.2d 467 (Ala. 1996), the defendant stopped at an intersection, looked for oncoming traffic, failed to see any traffic, started to make a left turn, and was struck in the passenger side of her vehicle by an oncoming vehicle. The Court ruled that this conduct did not constitute wantonness of the driver had looked and simply failed to see the oncoming vehicle. *Id.* at 470. Finally, in *Dorman v. Jackson*, 623 So.2d 1056 (Ala. 1993), the driver of the vehicle slowed down when nearing an intersection, failed to see any oncoming vehicles, attempted to make a left turn into the traffic lanes, and was struck by another vehicle. The Court found that the plaintiff failed to present substantial evidence of wantonness sufficient to overcome summary judgment. *Id.*

One key element of the claim of wantonness that must be evaluated is the mental state of Dan Healan. In *Ex parte Essary*, 992 So.2d 5 (Ala. 2007), the Court emphasized the requirement that a tortfeasor's "state of mind" contain the requisite consciousness, awareness, or perception that injury is likely to, or would probably, result from the activity alleged. *Id.* at 12. In addition, the Court stated the following with respect to the "state of mind" element necessary to prove a claim of wantonness:

"Indeed, the risk of injury to [the defendant driver] himself was as real as

10

any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in <u>self-destructive behavior</u>. See, *Griffin Lumber Co. v. Harper*, 252 Ala. 93, 95, 39 So.2d 399, 401 (1949)("there is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain and death. *Atlantic Coastline R. Co. v. Weatherington*, 245 Ala. 319 (9), 16 So.2d 720 [(1944)].").

*Id.* See also, *Jinright v. Warner Enterprises, Inc.*, 607 F.Supp.2d 1274 (M.D.Ala. 2009)(noting that the *Essary* presumption against self-destructive behavior is designed to avoid liability for wantonness absent mental impairment or depraved conduct such as (1) driving in reverse on a major interstate, or (2) driving through an intersection at a fast speed after ignoring a stop sign, both examples cited in Alabama cases.).

The *Essary* presumption prevents circumstantial evidence of wantonness unless there is a reason to believe that Healan was suffering from "impaired judgment" or if his conduct was so "inherently reckless" that it would signal the kind of "depravity consistent with disregard of instincts of safety or self-preservation." *Essary*, 992 So.2d at 12. In this case, there is no evidence that Healan suffered from impaired judgment. In addition, while his sudden mechanical failure while travelling at a safe speed ultimaely led to the accident in this case, there is no evidence that his actions were so inherently reckless as to signal the kind of depravity required by *Essary*. It is also, logically, not suggestive of the kind of knowledge of likely injury required by the consciousness standard applied to wantonness claims in Alabama discussed above.

Based on the foregoing, as well as the undisputed material facts set forth previously, Healan asserts that he is entitled to summary judgment with respect to the wantonness claim (Count II) arising from the automobile accident in this case.  There are no disputed issues of material fact and, pursuant to Rule 56, Fed.R.Civ.P., Healan is entitled to summary judgment on this claim.

II.    The Defendant is Entitled to Summary Judgment with Respect to the Mechanical Defect Allegations in the Amended Complaint (Counts VI, VII and VIII)

As set forth above, Healan contends that he was faced with a sudden emergency when the brakes of his vehicle failed immediately prior to the accident at issue in this case.   The Plaintiff's Amended Complaint asserts claims of (1) negligent repair/maintenance/manufacture of equipment (Count VI); (2) wanton repair/maintenance/manufacture of equipment (Count VII); and (3) negligence per se – violation of safe brake act (Count VIII).  (Doc. 25).  While Healan contends that his brakes failed prior to the accident in this case, there is no evidence in this case that this failure resulted from Healan's failure to maintain his automobile.[1]

As set forth previously, Healan had owned the vehicle since it was purchased new in 2002.  The vehicle had regularly been maintained and serviced, with the last servicing on November 19, 2010 - - approximately seven months before the accident - - by Tim's Quality Care in New Orleans.  (See Exhibit A, Depo. of D. Healan, p. 27;

---

[1] Healan  notes that Count VII of the Amended Complaint alleges that he wantonly repaired/maintained and/or manufactured the equipment on the automobile. Based on the prior argument and authority with respect to wantonness, Healan asserts that he is also entitled to summary judgment on Count VII of the

Exhibit B, Depo. Exhibit 3).  This service included an inspection of the braking system of the vehicle which was found to be in good working order.  *Id*.

In addition, Healan testified that the braking system on the automobile was working properly until the time of the accident.  Healan had driven the vehicle that morning from his home in New Orleans through Montgomery and had stopped on two or three occasions during the trip.  Not only had he not historically had any problems or notice of any defects with the braking system, he had traveled hundreds of miles and used the brakes multiple times without incident in the hours prior to the accident. Based on Healan's undisputed deposition testimony, as well as the vehicle's service records produced through discovery in this case, there is simply no evidence that any actions or inactions on the part of Healan contributed to the brake defect alleged in this case. Absent evidence of neglect or prior notice of braking problems, the Defendant is entitled to summary judgment with respect to the above-described counts of the Plaintiff's Second Amended Complaint.

## <u>CONCLUSION</u>

Based on the foregoing, the Defendant asserts that he is entitled to partial summary judgment in this case with respect to Counts II, VI, VII and VIII of the Plaintiff's original and Amended Complaints.  There are no disputed issues of material fact and the Defendant is entitled to judgment as a matter of law on these claims.

---

Complaint.  Plaintiff has failed to present any evidence to meet the heightened culpability standard

Respectfully submitted this 6th day of February, 2017.

/s/ S. Anthony Higgins
S. ANTHONY HIGGINS
Attorney for Defendant Dan Healan

OF COUNSEL:
HOLTSFORD GILLILAND HIGGINS HITSON & HOWARD, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
Telephone: (334) 215-8585
Facsimile: (334) 215-7101
thiggins@hglawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February, 2017, an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of the same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm email to the following attorneys:

Linda D. Benson, Esq.
LINDA BENSON, P.C.
P.O. Box 780818
Tallassee, Alabama 36078

Michael S. Harper, Esq.
MICHAEL S. HARPER, P.C.
2013 Barnett Boulevard
P.O. Box 780608
Tallassee, Alabama 36078

/s/ S. Anthony Higgins
OF COUNSEL

required to establish wantonness with respect to the repair or maintenance of the vehicle.